IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ANDREW D. WENMOTH,

      Plaintiff,

v.                                                  Civil Action No. 3:08cv182
                                                (Judge Bailey)

OVID W. DUNCAN, JR., DIANA
R. MILLER, LARRY MCBRIDE,
KENNY AIKENS, TERESA WAID,
JIM RUBENSTEIN, CHARLENE SOTAK,

      Defendants.

## OPINION/REPORT AND RECOMMENDATION

On December 18, 2008, the *pro se* plaintiff initiated this case by filing a civil rights complaint against the above-named defendants pursuant to 42 U.S.C. § 1983. On January 8, 2009, the plaintiff was granted permission to proceed as a pauper and assessed an initial partial filing fee of $19.84. The plaintiff paid his initial partial fee on January 27, 2009. This case is before the undersigned for a preliminary review and report and recommendation pursuant to 28 U.S.C.§§ 1915(e) and 1915A and LR PL P 83.01 et seq.

### I. Standard of Review

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v.

Williams, 490 U.S. 319, 325 (1989). However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[1] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). This includes claims in which the plaintiff has little or no chance of success. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

## II. The Complaint

In the complaint, the plaintiff asserts that he was hired by the Huttonsville Correctional Center as a legal clerk on August 17, 2007. As a legal clerk, the plaintiff was expected to assist other inmates in using the law library, doing legal research and preparing legal filings. The plaintiff was hired by the Library Supervisor, Ovid Duncan ("Duncan"). At the time he was hired, the plaintiff was told that if he ever filed grievances concerning the library, he would be terminated from his employment.

On June 25, 2008, the plaintiff sent a letter to Duncan's supervisor, Diana Miller ("Miller"), Associate Warden of Programs, complaining of Duncan's threat of termination. Several weeks later the plaintiff was called to Miller's office to discuss his complaint against Duncan. After a brief discussion, Miller assured the plaintiff that she would discuss his concerns with Duncan. However, the plaintiff did not believe this was the appropriate course of action because he feared retaliation from Duncan. The plaintiff heard nothing further with regard to his complaint against Duncan.

On October 7, 2007, the plaintiff submitted grievance number 08-HCC-C-255 wherein he

---

[1] Id. at 327.

complained about the inadequacy of library access for inmates in segregation. The plaintiff had discussed the matter with Duncan, but Duncan "turned a deaf ear" to the plaintiff's complaints. Further, the plaintiff felt it was his duty as a legal clerk to bring such matters to Duncan's attention, especially, in light of the fact that the issue had been brought to him by inmates in the segregation unit through his employment as a legal clerk. The plaintiff's grievance was denied by Lt. Bryan Lantham ("Lantham") pursuant to a provision of the West Virginia Division of Corrections Inmate Grievance Procedures which provides that an inmate may not submit a grievance on behalf of another inmate, unless the matter directly affects the inmate filing the grievance. Lanham's response was affirmed and the plaintiff's appeal denied by Charlene Sotak ("Sotak") on behalf of the Commission of the West Virginia Division of Corrections ("WVDOC "or "DOC").

The plaintiff filed a second grievance as to this issue. That grievance was assigned grievance number 08-HCC-C-280. In that grievance, the plaintiff explained that the issue raised in his prior grievance did in fact directly affect him. That grievance was denied by Duncan for the failure to follow the appropriate procedures.

At approximately 8:00 a.m. on October 14, 2008, Duncan terminated the plaintiff from his position as a legal clerk. The reason given for the termination was the filing of the aforementioned grievances. When the plaintiff complained that such termination was inappropriate, Duncan then told the plaintiff that his work performance was unsatisfactory. The plaintiff asserts that his work performance had never been questioned before.

After his termination, the plaintiff filed several grievances complaining of his retaliatory termination. In those grievances, the plaintiff asserted that he had been fired in retaliation for the filing of grievances. In addition, the plaintiff filed several requests to speak with Miller about his

termination. When the plaintiff was eventually called to Miller's office, he was told by Miller that she had given Duncan permission to fire the plaintiff prior to his termination.

On November 6, 2008, the plaintiff was in the law library preparing a document to be sent to an attorney. The plaintiff was taping a small piece of paper over sections of the document to delineate certain portions of the document. The document was the plaintiff's personal copy of WVDOC Policy Directive 325.00, concerning inmate rules and discipline. The plaintiff asserts that while he was preparing this document, Duncan approached him at a brisk pace and forcibly removed the document from his hands. The plaintiff asserts that this was not the first time Duncan had confiscated or read his legal documents, but that it was the first time Duncan had used force to obtain such documents.

The plaintiff reported this incident to Larry McBride ("McBride"), a correction officer. In relating the story, the plaintiff informed McBride that Duncan had assaulted him. The plaintiff asserted that he had been "put in reasonable apprehension of imminent harmful or offensive contact," and that he therefore felt that Duncan had assaulted him. Moreover, the plaintiff asserts that had an inmate exhibited such behavior to staff, the inmate would have been charged with the institutional offense of assault. The plaintiff reiterated his complaint to McBride's supervisor, Sgt. Greg Hutzell, shortly thereafter.

On November 10, 2008, the plaintiff submitted grievance numbers 08-HCC-C-299, concerning the improper seizure of his property, and 08-HCC-C-298, concerning the assault by Duncan.

On November 18, 2008, the plaintiff received notice that he had been charged with a violation of disciplinary rule 2.11, possessing contraband. In that report, Duncan alleged that the

document he confiscated from the plaintiff was considered contraband because it had been altered.

On November 17, 2008, a hearing was held where the plaintiff pleaded not guilty to the contraband charge. However, Correctional Hearing Officer, Kenny Aikens ("Aikens"), found the plaintiff guilty of the charge and sanctioned him to 20 hours of extra duty, punishment suspended in lieu of probation.

Three weeks later, the plaintiff was advised that he had received another disciplinary report. This report was prepared by McBride and alleged that the plaintiff had made fraudulent misrepresentations in violation of disciplinary rule 2.17. Specifically, McBride charged that the plaintiff made fraudulent misrepresentations when he reported that Duncan had assaulted him.

A disciplinary hearing was held on this charge on December 2, 2008. The plaintiff was permitted to present one witness who testified that Duncan had in fact assaulted the plaintiff. The plaintiff also presented video surveillance which verified his version of the events. The plaintiff asserts that he requested permission to present other witnesses, but was only allowed to present the one witness. Additionally, the plaintiff alleged that he was being punished for filing grievances against Duncan and requested permission to file his prior grievances as evidence. The plaintiff's request was denied. Eventually, the plaintiff was found guilty of the charge based on the testimony of McBride. However, the plaintiff asserts that McBride testified only that he did not see Duncan assault the plaintiff, not that he was not actually assaulted. As a result of the guilty finding, the plaintiff received sanctions of 30 days punitive segregation and 30 days loss of all privileges.

### III. Analysis

**A. Defendants Waid Rubenstein and Sotak**

Liability under § 1983 is "personal, based upon each defendant's own constitutional

violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted). Therefore, in order to establish liability under § 1983, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right under § 1983. Rizzo v. Good, 423 U.S. 362 (1976).

With respect to defendants Waid, Rubenstein and Sotak, the plaintiff asserts no personal involvement on the part of any of those defendants in the alleged violations of his constitutional rights. Instead, the plaintiff merely asserts that those persons had supervisory authority over the alleged violators and that they should have done something to prevent the alleged violations of the plaintiff's rights.

In Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit recognized that supervisory defendants may be liable in a Bivens action if the plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." In so finding, the Court recognized that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." Id. However, the plaintiff cannot establish

6

supervisory liability merely by showing that a subordinate was deliberately indifferent to his needs. Id. Rather, the plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. Id.

In this case, the plaintiff has not provided any evidence that defendants Waid, Rubenstein and Sotak tacitly authorized or were indifferent to an alleged violation of his constitutional rights. Instead, it appears that those defendants simply failed to grant the plaintiff relief during the administrative remedy process. However, an administrator's participation in the administrative remedy process is not the type of personal involvement required to state a claim under § 1983. See Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003). Rather, such participation establishes, at best, that Waid, Rubenstein and Sotak acted in their official capacities as the Warden of the Huttonsville Correctional Center, the Commissioner of the WVDOC and the Inmate Grievance Coordinator for the WVDOC, respectively. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. Id. at 166. In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. Id. (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978)). In this case, the plaintiff fails to assert that a policy or custom of the entity played a part in the alleged violation of his constitutional rights.

Accordingly, the plaintiff cannot maintain this case against defendants Waid, Rubenstein and Sotak, and those defendants should be dismissed from this action.

**B.     The Plaintiff's Retaliation Claims**

1. Defendant Duncan

In the complaint, the plaintiff asserts that defendant Duncan fired him from his job as a legal clerk in retaliation for the plaintiff filing administrative grievances. In addition, the plaintiff asserts that Duncan issued a disciplinary report against the plaintiff for contraband, in retaliation for the plaintiff filing administrative grievances.

2. Defendant McBride

In the complaint the plaintiff asserts that defendant McBride issued a disciplinary report against the plaintiff for fraudulent misrepresentation in retaliation for the plaintiff's filing of administrative grievances.

In order to sustain a claim based on retaliation, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994). Therefore, *"in forma pauperis* plaintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked conclusory allegations of reprisal to survive [§ 1915(e)(2)(B) ]." Id. Furthermore, claims of retaliation are treated with skepticism in the prison context. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir.1996). Additionally, "a plaintiff alleging that government officials retaliated against her in violation of her constitutional rights must demonstrate, *inter alia,* that she suffered some adversity in response to her exercise of protected rights. " American Civil Liberties Union of Maryland, Inc. v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993).

However, inmates do not have a constitutional right to participate in grievance procedures. Adams, 40 F. 3d at 75. Thus, the plaintiff can state no retaliation claim regarding the filing of his grievances. Accordingly, the plaintiff's retaliation claims should be dismissed with prejudice for

the failure to state a claim.

## C. Conspiracy

In the complaint, the plaintiff asserts that defendants Duncan, Miller, McBride and Aikens conspired to retaliate against him for the filing of grievances. However, to establish a civil conspiracy, a plaintiff must prove that two or more persons acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in the plaintiff's deprivation of a constitutional right. Hinkle v. City of Clarksburg, WV, 81 F.3d 416 (4th Cir. 1996). Moreover, the plaintiff has a "weighty burden to establish a civil rights conspiracy." Id. at 421. While the plaintiff does not need to "produce direct evidence of a meeting of the minds, [he] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." Id. In this case, that means the plaintiff must produce evidence that at least leads to the inference that the defendants had a mutual agreement to retaliate against him. Nevertheless, "mere speculation and conjecture will not suffice." Puglise v. Cobb County, 4 F.Supp.2d 1172, 1181 (N.D.Ga. 1998).

Here, the plaintiff provides no evidence which would lead to even an inference that the defendants had an agreement to retaliate against him. At best, the plaintiff offers speculation and conjecture, which is not sufficient to state a claim for conspiracy. Thus, the plaintiff has failed to establish that a civil conspiracy existed and his conspiracy claim should be dismissed.

## D. The Plaintiff's Assault Claim

Although it is not entirely clear from the complaint, it appears that the plaintiff attempts to allege a civil claim of assault against defendant Duncan. Upon due consideration of the facts as alleged in the complaint, the undersigned finds that such a claim should not be summarily dismissed

9

at this time and that Duncan should be made to answer the complaint only as to the plaintiff's claim of assault.

E.  **The Plaintiff's Disciplinary Report for Fraudulent Representation**

It appears from the complaint that the plaintiff challenges the process he received with regard to his disciplinary report for fraudulent misrepresentation. In particular, the plaintiff asserts that defendant Aikens prevented him from admitting certain evidence into his disciplinary proceedings and refused to permit the plaintiff to call all of the witnesses he requested. Moreover, the plaintiff appears to argue that the evidence was insufficient to sustain the finding of guilt, and possibly, that defendant McBride either did not testify truthfully at the disciplinary hearing, or purposely mislead the disciplinary hearing officer as to the facts of the report.

Upon due consideration, the undersigned finds that the plaintiff's due process claim with regard to the disciplinary proceedings surrounding his violation report for fraudulent representation should not be summarily dismissed and that defendants Aikens and McBride should be made to answer the complaint with regard to this issue only.

## IV.  Recommendation

For the foregoing reasons, the undersigned makes the following recommendations:

▸ The plaintiff's claims against defendant Waid, Rubenstein and Sotak be **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915 for the failure to state a claim for which relief may be granted.

▸ The plaintiff's retaliation and conspiracy claims be **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915 for the failure to state a claim for which relief may be granted. Moreover, because the plaintiff's retaliation and conspiracy claims

10

encompass his entire claim against defendant Miller, then defendant Miller be **DISMISSED with prejudice** from this action.

▸ The plaintiff's assault claim against defendant Duncan, and the plaintiff's due process claim against defendants McBride and Aikens related to his disciplinary report for fraudulent representation, **PROCEED** and those defendants be **SERVED** with a copy of a twenty (20) day summons and the complaint through the United States Marshal Service.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: February 26, 2009.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE