IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ANDREW D. WENMOTH,**

      **Plaintiff,**

**v.**
                                                                                  Civil Action No. 3:08cv182
                                                                                  (Judge Bailey)

**OVID W. DUNCAN, DIANA R. MILLER,**
**LARRY MCBRIDE, KENNY AIKENS,**
**TERESA WAID, JIM RUBENSTEIN AND**
**CHARLENE SOTAK,**

      **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this action on December 18, 2008, by filing a civil rights complaint against the above-named defendants pursuant to 42 U.S.C. § 1983. (Dckt. 1). After the plaintiff was granted permission to proceed as a pauper, the undersigned conducted a preliminary review of the file and made the following recommendations:

(1) the plaintiff's claims against defendants Teresa Waid, Jim Rubenstein and Charlene Sotak be dismissed with prejudice for the failure to state a claim for which relief may be granted;

(2) the plaintiff's retaliation and conspiracy claims be dismissed with prejudice for the failure to state a claim for which relief may be granted;

(3) the plaintiff's claim against Diana R. Miller be dismissed with prejudice; and

(4) the plaintiff's assault claim against defendant Duncan, and his due process claim against defendants McBride and Aikens related to the plaintiff's disciplinary report for fraudulent representation proceed, and those defendants be directed to answer the complaint.

(Dckt. 13 at 10-11). That report and recommendation was adopted in its entirety on August 26, 2009. (Dckt. 21).

On September 21, 2009, defendants Aikens, McBride and Duncan filed a Motion for Summary Judgment. (Dckt. 35). Because the plaintiff is proceeding *pro se*, the Court issued a Roseboro Notice on September 25, 2009. (Dckt. 39). The plaintiff filed a response to the defendants' motion on October 23, 2009 (dckt. 48), and the defendants filed a reply shortly thereafter (dckt. 49). Thus, this case is before the undersigned for a report and recommendation on the defendants' Motion to Dismiss.

## II. Contentions of the Parties

### A. The Complaint

In the complaint, the plaintiff asserts that he was hired by the Huttonsville Correctional Center as a legal clerk on August 17, 2007. As a legal clerk, the plaintiff was expected to assist other inmates in using the law library, doing legal research and preparing legal filings. The plaintiff was hired by the Library Supervisor, Ovid Duncan ("Duncan"). At the time he was hired, the plaintiff was told by Duncan that if he ever filed grievances concerning the library, his employment would be terminated.

On June 25, 2008, the plaintiff sent a letter to Duncan's supervisor, Diana Miller ("Miller"), Associate Warden of Programs, complaining of Duncan's threat of termination. Several weeks later the plaintiff was called to Miller's office to discuss his complaint. After a brief discussion, Miller assured the plaintiff that she would bring his concerns to Duncan. However, the plaintiff did not believe this was the appropriate course of action because he feared retaliation from Duncan. The plaintiff heard nothing further with regard to his complaint.

2

On October 7, 2007, the plaintiff submitted grievance number 08-HCC-C-255 wherein he complained about the inadequacy of library access for inmates in segregation. The plaintiff had discussed the matter with Duncan, but Duncan "turned a deaf ear" to the plaintiff's complaints. Further, the plaintiff felt it was his duty to bring such matters to Duncan's attention because the issue had been brought to him through his position as a legal clerk. The plaintiff's grievance was denied by Lt. Bryan Lantham ("Lantham") pursuant to a provision of the West Virginia Division of Corrections Inmate Grievance Procedures which provides that an inmate may not submit a grievance on behalf of another inmate, unless the matter directly affects the inmate filing the grievance. An appeal of that decision was denied by the Commissioner of the West Virginia Division of Corrections ("WVDOC "or "DOC").

The plaintiff filed a second grievance as to this issue. His second grievance was assigned grievance number 08-HCC-C-280. In that grievance, the plaintiff explained that the issue raised in his prior grievance did in fact directly affect him. The plaintiff's second grievance was denied by Duncan for the failure to follow the appropriate procedures.

At approximately 8:00 a.m. on October 14, 2008, Duncan terminated the plaintiff from his position as a legal clerk. The reason given for the termination was the filing of the aforementioned grievances. When the plaintiff complained that such termination was inappropriate, Duncan then told the plaintiff that his work performance was unsatisfactory. The plaintiff asserts that his work performance had never before been questioned.

After his termination, the plaintiff filed several grievances which complained of retaliatory termination. In those grievances, the plaintiff asserted that he had been fired in retaliation for the filing of grievances. In addition, the plaintiff filed several requests to speak with Miller about his

3

termination. When the plaintiff was eventually called to Miller's office, he was told by Miller that she had given Duncan permission to fire the plaintiff prior to his termination.

On November 6, 2008, the plaintiff was in the law library preparing a document to be sent to an attorney. The plaintiff was taping a small piece of paper over sections of the document to delineate certain portions of the document. The document was the plaintiff's personal copy of WVDOC Policy Directive 325.00, concerning inmate rules and discipline. The plaintiff asserts that while he was preparing this document, Duncan approached him at a brisk pace and forcibly removed the document from his hands. The plaintiff asserts that this was not the first time Duncan had confiscated or read his legal documents, but that it was the first time Duncan had used force to obtain such documents.

The plaintiff reported this incident to Larry McBride ("McBride"), a correction officer. In relating the story, the plaintiff informed McBride that Duncan had assaulted him. The plaintiff asserted that he had been "put in reasonable apprehension of imminent harmful or offensive contact," and that he therefore felt that Duncan had assaulted him. Moreover, the plaintiff asserts that had an inmate exhibited such behavior to staff, the inmate would have been charged with the institutional offense of assault. The plaintiff reiterated his complaint to McBride's supervisor, Sgt. Greg Hutzell, shortly thereafter.

On November 10, 2008, the plaintiff submitted grievance numbers 08-HCC-C-299, concerning the improper seizure of his property, and 08-HCC-C-298, concerning the assault by Duncan.

On November 18, 2008, the plaintiff received notice that he had been charged with a violation of disciplinary rule 2.11, possessing contraband. In that report, Duncan alleged that the

document he confiscated from the plaintiff was considered contraband because it had been altered.

On November 17, 2008, a hearing was held where the plaintiff pleaded not guilty to the contraband charge. However, Correctional Hearing Officer, Kenny Aikens ("Aikens"), found the plaintiff guilty of the charge and sanctioned him to 20 hours of extra duty, punishment suspended in lieu of probation.

Three weeks later, the plaintiff was advised that he had received another disciplinary report. This report was prepared by McBride and alleged that the plaintiff had made fraudulent representations in violation of disciplinary rule 2.17. Specifically, McBride charged that the plaintiff fraudulently represented that Duncan had assaulted him.

A disciplinary hearing was held on this charge on December 2, 2008. The plaintiff was permitted to present one witness who testified that Duncan had in fact assaulted the plaintiff. The plaintiff also presented video surveillance which verified his version of the events. The plaintiff asserts that he requested permission to present other witnesses, but was only allowed to present the one witness. Additionally, the plaintiff alleged that he was being punished for filing grievances against Duncan and requested permission to file his prior grievances as evidence. The plaintiff's request was denied. Eventually, the plaintiff was found guilty of the charge based on the testimony of McBride. However, the plaintiff asserts that McBride testified only that he did not see Duncan assault the plaintiff, not that he was not actually assaulted. As a result of the guilty finding, the plaintiff received sanctions of 30 days punitive segregation and 30 days loss of all privileges.

As relief for the alleged violations of his rights, the plaintiff seeks the following relief:

(1) a declaration that the acts and omissions described violated his right under the Constitution and laws of the United States;

(2) a temporary restraining order requiring his immediate release from segregation;

(3) a preliminary and permanent injunction ordering the defendants to cease and desist taking adverse action against him in retaliation and retribution for the filing of this suit;

(4) monetary damages in an amount determined by a jury;

(5) a jury trial on all issues triable by a jury; and

(6) any additional relief the court deems equitable, proper and just.

## B. The Defendants' Motion for Summary Judgment

In their motion for summary judgment, the defendants assert that they are due judgment as a matter of law because:

(1) the plaintiff has failed to provide any evidence that he exhausted his administrative remedies with regard to the assault allegations against defendant Duncan;

(2) the actions of defendant Duncan do not constitute assault;

(3) if the Court construes defendant Duncan's actions as assault, he was privileged in the same as a correctional employee enforcing correctional policies and procedures;

(4) the United States District Court should decline to hear the plaintiff's state law claim of assault against defendant Duncan;

(5) the defendant was afforded all the process he was due with regard to the fraudulent representation charge;

(6) defendant Aiken, as a correctional hearing officer, is entitled to immunity; and

(7) the defendants are entitled to qualified immunity.

## C. The Plaintiff's Response to the Defendants' Summary Judgment Motion

In his response to the defendants' motion, the plaintiff first asserts that because exhaustion

is an affirmative defense, he is under no obligation to provide evidence of the same. Even if he was, the plaintiff further argues that he provided such evidence in the exhibits to his complaint. Second, the plaintiff asserts that defendant Aikens is not entitled to immunity. In support of this claim, the plaintiff recognizes that other courts, including the Fourth Circuit, have found that correctional officers may not be amenable to suit for their participation in disciplinary proceedings. However, the plaintiff asserts that these cases were overruled by the Supreme Court in Cleavenger v. Saxner, 474 U.S. 193 (1985).

Third, the plaintiff asserts that none of the defendants are entitled to qualified immunity. In support of this contention, the plaintiff asserts that it is firmly established that a prisoner may not be subjected to an unprovoked and unwarranted assault at the hands of a prison official. In addition, he asserts that it is well-established that a prisoner is entitled to due process during disciplinary proceedings. The plaintiff also notes that these rights were clearly established prior to the alleged assault and disciplinary proceeding.

Fourth, the plaintiff asserts that he has stated a claim for relief, and whether Duncan intended to put him in fear of harm is irrelevant. The plaintiff states that whatever Duncan's intention, he was in fear of harmful or offensive conduct. Therefore, the plaintiff asserts that Duncan committed assault.

Fifth, the plaintiff asserts that Duncan, as a prison librarian, is not entitled to the same privilege that other corrections officers are in using force. Even if he was, the plaintiff argues that no amount of force was reasonable in this circumstance because all Duncan had to do was ask for the documents and the plaintiff would have submitted them to him.

Next, the plaintiff asserts that his due process rights were violated during his disciplinary

proceeding when defendant Aikens refused him the opportunity to call certain witnesses and enter certain documentary evidence. The plaintiff also alleges other procedural irregularities which he contends violate his due process rights and that there was no evidence to support the finding of guilt.

Finally, the plaintiff argues that any state law assault charges should not be dismissed because his assault and due process claims are interdependent. For all of these reasons, the plaintiff asks that the defendants' motion for summary judgment be denied.

**D. The Defendants' Reply to the Plaintiff's Response**

In their reply to the plaintiff's response, the defendants assert that the <u>Clevenger</u> Court did not rule that members of a disciplinary committee are not entitled to judicial immunity. Instead, the defendants assert that the <u>Clevenger</u> Court found that their immunity is qualified, rather than absolute. Next, the defendants assert that it is the plaintiff's burden to show that there is a genuine claim of assault. Here, according to the defendants, the plaintiff has failed to even show that an assault occurred, let alone that the "assault" rises to the level of a constitutional violation. In addition, the defendants contend that the plaintiff's due process rights were not violated during his disciplinary proceedings. Specifically, the defendants assert that multiple witnesses would have been duplicative and were appropriately denied, that other evidence was not entered in the record because the hearing examiner found it irrelevant and that there is clearly some evidence to support the finding of guilt. Finally, the defendants reiterate their claim that they are entitled to qualified immunity and that the Court should decline to hear the plaintiff's state law assault claims.

### III. Standard of Review

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits,

8

if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. *Id.* This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. *Id.* at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

### IV.  Analysis

**A.  The Alleged Assault**

    1.  Exhaustion of Administrative Remedies

In the defendants' motion, they assert that the plaintiff has failed to prove that he exhausted his administrative remedies with regard to the alleged assault by Duncan. In response, the plaintiff asserts that he does not have to provide such proof, and even if he did, he provided proof of exhaustion with his complaint.

Under the Prison Litigation Reform Act (PLRA), a prisoner who brings an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[1] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 84-85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford at 92-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. *Id.* at 101-102. However, in Jones v. Bock, 549 U.S.

---

[1] *Id.*

199 (2007), the United States Supreme Court ruled, among other things, that an inmate's failure to exhaust under the PLRA is an affirmative defense, and an inmate is not required to specifically plead or demonstrate exhaustion in his complaint.

The WVDOC has established a three level grievance process for prisoners to grieve their complaints in an attempt to resolve the prisoners' issues. The first level involves filing a G-1 Grievance Form with the Unit Supervisor. If the inmate receives no response or is unsatisfied with the response received at Level One, the inmate may proceed to Level Two by filing a G-2 Grievance Form with the warden/administrator. Finally, the inmate may appeal the Level 2 decision to the Commissioner of the Division of Corrections.

In this case, the plaintiff asserts in his complaint that his administrative remedies are exhausted. Moreover, he attaches what purports to be copies of those remedies to his complaint. Although the defendants assert that the plaintiff did not exhaust his administrative remedies with regard to the alleged assault, the defendants have provided no affidavits or any other evidence which establishes the failure to exhaust. Thus, because exhaustion is an affirmative defense, it is the defendants' burden to establish the plaintiff's failure in that regard. Having failed to do so, the defendants exhaustion argument should be denied.

2. Merits of Claim

In any 42 U.S.C. §1983 cause of action, the initial inquiry must focus on whether the two essential elements to a section 1983 action are present.

> A successful section 1983 action requires a showing that the conduct complained of (1) was committed by a person acting under the color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States.

Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992) (citing Flagg Brothers, Inc., v. Brooks, 436

U.S. 149, 156-157 (1978). To establish liability under § 1983, the plaintiff must also allege an affirmative causal connection between the defendant's conduct and the constitutional deprivation. See Swint v. City of Wadley, Alabama, 51 F.3d 988 (11th Cir. 1995). Moreover, the plaintiff must show that the defendant's conduct "cross[ed] over an ill-defined, but nonetheless very real, threshold which separates state torts from deprivations of constitutionally protected rights." Spell v. McDaniel, 591 F.Supp. 1090, 1102 (E.D.N.C. 1984).

In addition, *pro se* complaints are to be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Gordon v. Leeke, 574 F. 2d 1147 (4th Cir. 1978). This means that if the court can reasonably read the *pro se* pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a court may not rewrite a petition to include claims that were never presented, Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), construct the plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986).

In this case, the plaintiff complains that he was assaulted by Duncan. In support of that claim, the plaintiff alleges that Duncan walked briskly toward him and forcibly removed some documents from the plaintiff's hands, putting him in fear of harm. However, even assuming these allegations are true, and that Duncan's actions constitute an assault, the undersigned fails to see how Duncan's actions rise to the level of a constitutional violation. The undersigned simply does not believe that the plaintiff has shown facts which "cross the threshold" between a state tort and a deprivation of his constitutionally protected rights. Nonetheless, reading the plaintiff's claims liberally, the undersigned finds that the plaintiff has, at best, alleged a claim of excessive force.

against Duncan.[2]

The Eighth Amendment prohibits "the unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312 (1986). The use of excessive force may constitute cruel and unusual punishment. Hudson v. McMillian, 503 U.S. 1 (1992). An excessive force case has two prongs an objective prong and a subjective prong. Under the objective prong, the plaintiff must establish that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Norman v. Taylor, 25 F.3d 1259, 1262 (4th Cir.1994) (en banc), *cert. denied*, 513 U.S. 1114 (1995)(quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). Subjectively, the plaintiff must show that the "prison officials maliciously and sadistically used force to cause harm." Hudson, 503 U.S. at 9; Williams v. Benjamin, 77 F. 3d 756, 761 (4th Cir. 1996).

According to the Fourth Circuit Court of Appeals, "absent the most extraordinary circumstances" an individual who suffers only *de minimis* injuries cannot prevail on an Eighth Amendment excessive force claim. Riley v. Dorton, 115 F.3d 1159 (4th Cir.)(en banc), cert. denied, 522 U.S. 1030 (1997); Norman, 25 F.3d at 1263.[3] "The Eighth Amendments prohibition of 'cruel

---

[2] It is also possible that the plaintiff attempts to show a violation of his due process rights. However, "[t]o show a violation of due process in the context of an assault, the plaintiff must allege that the defendant intended to infringe a constitutional right through the battery or could reasonably have foreseen that infringement would be the result." Perry v. Walker, 586 F.Supp. 1264, 1265 (E.D.Va. 1984) (citations omitted). "[A]n allegation of unjustified striking alone, without a factual allegation of, for instance, a striking affecting other substantive constitutional rights of a plaintiff, simply does not state a constitutional claim." Sellers v. Roper, 554 F.Supp. 202, 206 (E.D.Va. 1982) (citing Screws v. United States, 325 U.S. 91 (1944)); see also Dandridge v. Police Department of the City of Richmond, 566 F.Supp. 152, 161 (E.D.Va. 1983); Brooks v. School Board of City of Richmond, Virginia, 569 F.Supp. 1534, 1538-1539 (E.D.Va. 1983). In this case, the plaintiff alleges nothing more than a general assault. He does not allege that Duncan intended to violate a specific constitutional right to which the plaintiff was entitled. Therefore, any due process claim, to the extent raised, should also be dismissed with prejudice for the failure to state a claim.

[3] In both Riley and Norman, the Fourth Circuit found that the plaintiff's injuries were *de minimis,* thereby proving that only *de minimis* force was used. In Norman, the plaintiff's injury was a swollen thumb

and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Hudson, 503 U.S. at 9-10.  See also Taylor v. McDuffie, 155 F.3d 479 (4th Cir. 1998), *cert. denied*, 525 U.S. 1181 (1999) (same).  However, if the force used is "repugnant to the conscience of mankind," *i.e.,* "diabolic" or inhuman physical punishment, a prisoner can prevail on an excessive force claim even if the injuries sustained are *de minimis*.  Norman, 25 F.3d at 1263.

Here, the plaintiff asserts no injury.  He merely asserts that Duncan forcibly removed some papers out his hands.  Such action is neither "repugnant" nor "diabolical."  And, even assuming this action was unreasonable because it was unnecessary, the plaintiff still cannot prevail.  Accordingly, the undersigned finds that the plaintiff has failed to state a constitutional claim with regard to the alleged assault, or in the alternative, a claim of excessive force, and this claim should be dismissed.

**B.   Plaintiff's Disciplinary Proceedings for Fraudulent Representation**

Prison disciplinary proceedings are not part of a criminal prosecution, therefore, the full panoply of rights that are due a defendant in a criminal proceeding do not apply in prison disciplinary proceedings.  Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975 (1974) ("there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution").  However, inmates are entitled to some due process protections.  *Id*.  Those protections include: written notice of the charges at least 24 hours before a hearing to enable the inmate to prepare a defense; to call witnesses and present documentary evidence if doing so is not an undue hazard to institutional safety, and a written explanation of the evidence relied on and reasons for disciplinary action.  *Id*.  On the other hand, an inmate does not have a right to

---

caused by the defendants keys hitting him in the hand.  In Riley, the plaintiff had his face slapped and had the tip of a pen placed in his nose, along with a threat to rip his nose open.

confrontation and cross-examination, or a right to counsel. *Id* at 567, 570. Disciplinary decisions comport with the requirements of procedural due process when there is "some evidence" to support the disciplinary decision by the fact finder. Superintendent, Mass. Corr. Institution v. Hill, 472 U.S. 445, 117 S.Ct. 1584 (1985).

In the complaint, the plaintiff asserts, in essence, that he was not permitted to call all of his witnesses, he was not allowed to present relevant documentary evidence and that the evidence presented at the hearing does not support the finding of guilt. In his response to the defendants' motion, the plaintiff also asserts that the violation report was so inadequate that it failed to provide him written notice of the claimed violation. Moreover, he asserts that the report was not timely served on him and that the hearing was not held in a timely manner. Finally, the plaintiff asserts that he never received a copy of the incident report which precipitated the disciplinary action. Therefore, the plaintiff asserts that he did not receive the appropriate due process protections as were due him.

    1. Right to Call Witnesses and Present Documentary Evidence

There is no question that Wolff establishes that an inmate in a prison disciplinary proceeding is entitled to call witness and present documentary evidence. Wolff, 418 U.S. at 556. That right, however, is not unlimited. Because of the nature of the setting, prison officials may limit an inmate's right to call witnesses and present documentary evidence where the safety of the institution is threatened. *Id*. In addition, much like court proceedings, witnesses and documentary evidence may be limited where they are redundant or irrelevant.

In this case, the evidence shows that at the hearing, the plaintiff requested three witnesses be called to testify on his behalf. Defendants' Ex. C (Affidavit of Kenny Aikens) at ¶ 4. Upon further questioning by the hearing officer, it was determined that all three witnesses would testify

15

in a like manner, and that their testimony was therefore, redundant. *Id*. In addition, it was explained to the plaintiff that one of the witnesses he wished to call was in confinement and could not be brought to the hearing for security reasons. *Id*. at ¶ 5. Given those circumstances, the plaintiff indicated that he would like to call witness, Neil Long, and Mr. Long testified at the hearing. *Id*. at ¶¶ 4-5. As to the documentary evidence, the hearing officer found that the requested documents were not relevant to the proceedings. *Id*. at Ex. F.

It is clear from the undisputed facts that the plaintiff was not prevented from calling witnesses or presenting documentary evidence. Instead, the hearing officer merely limited the plaintiff's ability to do so for security and other legitimate reasons. Further, it is clear from the hearing report that the plaintiff was not otherwise barred from presenting the arguments found in the disallowed materials during the hearing, and in fact, did raise these arguments. *Id*. Because the plaintiff does not have the unfettered right to call witnesses and present documentary evidence, his due process rights were not violated in this regard.

2. Inadequate Notice and Other Procedural Violations

In this ground, the plaintiff asserts that the violation report served on him was "wholly inadequate to satisfy [the] due process requirements" of written notice of the claimed violation. Plaintiff's Memorandum (dckt. 48) at 9. He asserts instead, that he should have received a copy of the more detailed incident report that was prepared regarding the incident. Moreover, the plaintiff asserts that he did not receive the violation report until 20 days after the alleged incident, that the hearing was not held until nearly a month later and that he did not receive a copy of the incident report prior to the hearing. *Id*.

A review of the record in this case shows that the violation report states:

16

> On the 6th of November 2008, approximately 1420 hours, you inmate Wenmoth, Andrew DOC number 42092, did state to me, CO II Larry McBride, 'Mr. Duncan just assaulted me,' when I . . . let you . . . out of the library. I asked you again what happened and you . . . state[d] again that Librarian Duncan had assaulted you. You . . . did violate Policy Directive 325.00 rule number 2.17 being Fraudulent Representation when you said that Librarian Duncan had assaulted you when in fact, he did not assault you.

Defendants' Ex. E.

The incident in question occurred on November 6, 2008. *Id*. After an investigation, the plaintiff was charged with a violation of rule number 2.17 - Fraudulent Representation. *Id*. The plaintiff received a copy of the violation report on November 26, 2008 and his disciplinary hearing was held on December 2, 2008. *Id*. The delay in the processing of the plaintiff's claims or the issuance of the incident report, if any, was minimal. Moreover, the plaintiff does not assert that he was prejudiced in any way by the time in which it took to investigate the assault claim and process the violation report. In addition, the violation report is specific as to the date and time of the incident, the reason for the violation report and the basis for the charges. Thus, it contained adequate information for the defendant to defend himself at the disciplinary hearing. There is nothing to suggest that the incident report contained any more information from which the plaintiff could have defended himself. See Dckt. 48 at Ex. 5 (Incident Report). For these reasons, the undersigned finds no due process violation with regard to the adequacy of the violation report or the procedural violations claimed by the plaintiff.

4. <u>Some Evidence to Support Guilty Finding</u>

In this ground, the plaintiff asserts that there was no evidence to support the hearing officer's finding of guilt on the charge of fraudulent representation. Rule 2.17 - Fraudulent Representation states:

17

> No inmate shall represent themselves to any individual either as being a person other than who they are or incorrectly as a representative of any corporation, association, or organization. No inmate shall deceive, attempt to deceive, misinform, or attempt to misinform any fact or information to any person. No inmate shall tender or attempt to tender a worthless voucher.

Thus, in order to sustain a guilty finding on this charge, the evidence need only show that the plaintiff attempted to deceive or misinform McBride about the alleged assault.

According to the hearing report, defendant McBride testified that his reports were true and accurate. Defendants' Ex. F. Moreover, McBride testified that the plaintiff twice told him that Duncan had assaulted him. *Id*. McBride also testified that he was in the library at the time and did not see any physical contact between the plaintiff and Duncan at the time in question. *Id*; see also Defendants' Ex. C at ¶ 7. McBride further testified that he reviewed the video tape from the library for the date and time of the alleged incident and that the video did not support the plaintiff's contention that he had been assaulted. Defendants' Ex. F.

The plaintiff also testified at the hearing. *Id*. In his testimony, the plaintiff asserted that he felt threatened by the manner that Duncan forcibly removed the papers from his hand. *Id*. The plaintiff also testified that he felt he was being retaliated against for some previous grievances he had filed against Duncan. *Id*. The plaintiff testified that he believed Duncan's actions constituted assault. *Id*.

Inmate Neil Long also testified in the plaintiff's defense. *Id*. In essence, Inmate Long testified that he witnessed Duncan remove papers from the plaintiff's hand, or from under the plaintiff's hand, and take them to his office. *Id*.

In addition, the hearing officer and the plaintiff reviewed the video footage of the incident during the disciplinary hearing. Defendants' Ex. C (Affidavit of Kenny Aikens) at ¶ 8. The hearing

officer did not see an assault on the video. *Id*. Therefore, based on the video evidence, the documentary evidence and the testimony of the witnesses, the hearing officer found that the testimony supported a finding of guilt. *Id*; see also Defendants' Ex. F.

Although there was conflicting evidence presented at the disciplinary hearing, the hearing examiner reviewed the video tape, considered the documentary evidence and the testimony of the witnesses. Based on these factors, he determined that the evidence supported a finding of guilt. What the plaintiff wishes this Court to now do is to reweigh the evidence. However, that is not the province of this Court. The function of this Court is simply to determine whether there is some evidence to support the finding of guilt. In this case, there was undisputed testimony that the plaintiff accused Duncan of assault. However, the CO who investigated the incident determined that an assault never occurred. Moreover, the hearing examiner reviewed the video footage of the incident and determined that no assault occurred. Clearly, there was evidence presented by both sides. The hearing examiner weighed that evidence and determined that the evidence tipped in favor of a guilty finding. Being that there is some evidence in the record to support the hearing examiner's finding, there is no due process violation.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the defendants' Motion for Summary Judgment (dckt. 35) be **GRANTED in part**[4] and the plaintiff's complaint (dckt. 1) be **DENIED** and **DISMISSED with prejudice**.[5]

---

[4] The complaint should be denied as the defendants' exhaustion argument.

[5] Because the undersigned finds that there was no violation of the plaintiff's federal rights, constitutional or otherwise, the Court need not address the defendants' qualified immunity argument, nor defendant Aikens claim of immunity in his role as a hearing officer.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to counsel of record via electronic mean and to the plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: November 16, 2009.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE